Yes, Your Honors. Michael Balaban for the appellant. May it please the Court, I'd like to reserve two minutes for rebuttal. Okay. Keep your eye on the clock. It counts down. Okay. Yes, this case comes from the District Court of Nevada. Initially, summary judgment was denied on this case, and one of the main reasons for denial was the Court ruled that there was issues of fact as to the accommodations. And the case that's at issue here, Cleveland v. Policy Management Systems Corp., was argued on that initial motion. And so then the defendant below lost, and they brought a motion for reconsideration, and the Court reversed its initial order. But in reversing, the Court, and one of the appellant's first arguments is, and the Court even said in their order, that motions to reconsider need to bring up new evidence, new facts. It's not just to rehash old arguments. But what if the trial court thinks he missed it, missed the issue? He's got a ton of discretion to reopen, doesn't he? Well, I mean, he obviously has discretion, but, you know, we have a busy district court in Nevada, and if every time somebody lost a summary judgment, they bring a motion to reconsider, it backs up the Court. Speaking for myself, I would be more helped if you addressed the merits rather than whether or not he was right to reopen and reconsider. Yeah, that's fine. So then going to Cleveland, I mean, the Supreme Court made clear in Cleveland that the – that claiming disability, and Cleveland, of course, came under Social Security disability. Here we're dealing with PERS disability, which is a disability for Clark County. But the Court made clear there that disability, claiming disability and claiming that you violated the ADA, can exist concurrently. And specifically, the Court cited that in PERS, the statute says that the person has to be disabled for the past year to qualify, whereas Social Security, they have to be permanently disabled from any job. PERS, it's only from the position they held within the last year. Well, as I read the application for benefits under PERS, she is asked whether she is disabled from performing her current job or any comparable job, and she fills out that form in August after she has lost her job as literary specialist. So her current job, if she has one, is the job to which she's been assigned that she doesn't want to do, which is to say kindergarten. The next item on the form asks her what other jobs she could do with accommodations, and she says literary specialist. So I don't see that the district judge got it right in relying on the PERS application as inconsistent with her claim of disability. I think your answer is supposed to be yes. Yes. I was surprised you'd say that. Yes, I agree with that. You kind of surprised me. It's Christmas once in a while. What about the other applications that she filled out? The other applications? Right. And the district court is fair, aren't they, to look at any of the statements that she made to see whether or not there are admissions statements there that are inconsistent with her application? Yes, correct. I mean, the main application was the PERS application. Counsel, wasn't there an FLMA application? Wasn't there what? Wasn't there a Family Leave Act application? Didn't she? Yes, there was an FLMA one. She was disabled, seeking leave, with the Leave Act. Yes, you're correct. But that was the Family Medical Leave Act. That wasn't a permanent disability. That was a temporary disability to get family medical leave, but it wasn't a permanent disability that she was seeking. No, I wouldn't understand that normally, but the thing I was hung up on, and perhaps you could address this, is that I thought she filled out an application on that a month before, a month before the job would have started, and that she, and that her doctor said she was disabled indefinitely. I don't believe that was the case. Well, I mean, not permanently, maybe for the indefinite future it could have been, but I don't think it said that she was permanently disabled. The application that there are two Family Medical Leave Act applications, one in April, but I think Judge Gould's referring to the one dated August 25th, and her physician, I think, filled it out, said no work of any kind until released by doctor. And then in another answer to question 5C, it says she is presently incapacitated. She will need to be out of work indefinitely. And I grant you that there's a question about whether that really means forever or what it means by way of recovery, but I think what Judge Gould is getting at is, you know, it is timed. It's late August, and she's getting ready to look at the next school year. She's just on top of the next school year. So it does put her in a position of, you know, suing for having been discriminated against for not giving her a job that she says she can't do. Yeah. I mean, I think her doctor's position was always that with respect to the kindergarten teacher, because she had this back ailment that, yes, she was permanently disabled. With respect to the literacy specialist position, because it offered her the opportunity to sit down when needed, to even lie down in particular cases, that she would be able to do that. But there was a time on the FMLA. I know that even that position, she said the doctor filled out the FMLA paperwork, that she couldn't even do that for a while. Couldn't do any work. Until released by a doctor. What? Until can perform no work of any. I'm just quoting from what Dr. Spain wrote on August 25th. She can perform, quote, no work of any kind until released by a doctor. That does not sound like permanent. That sounds like until I say she can do it. Exactly. Right. So getting back to Judge Gould's question, since that application, the second family medical leave application, has this admission that we've both now just quoted, it is pretty much a statement made contemporaneously with her suing Clark County, right? Well, I mean, you know, in the background here, and there was a case that came out of this circuit, Johnson v. State of Oregon Department of Health Resources, and it has a similar fact pattern. I mean, how PERS works is if accommodation cannot be made, the employee will be medically separated. And that's what was going to happen here. So Ms. Smith was basically forced to go on PERS and fill out the PERS paperwork and this other paperwork to survive. But getting back to the Family Medical Leave Act and this dilemma that we've now, all three of us have pointed out about the August statements, because it says she can't do any work at all now. She can't do any work yet. So what should the Court have done? Well, again, it wasn't a permanent disability that, I mean, give her a leave of absence until which time that she could have gone back to doing some work. Well, when you say leave of absence, do you mean the case should have been stayed or so there could be determination of whether she was going to be able to put herself in a position of being a qualified individual or? Well, yes. I mean, that could have been done, a leave of absence, until she was able to do the, you know, some position. But here it was clear Clark County's position all along that she was not going to be, they weren't looking for anything but a kindergarten teacher or they discussed higher grades. They never looked at anything else. So, I mean, it was clear that she was never going to be able to come back to Clark County because she just could not do the standing, lifting and bending that was required for any classroom position. Okay. We've taken you to eight seconds of the event. Why don't we hear from the other staff? But we will give you a chance to respond. Okay. Good morning, Your Honors. Scott Greenberg on behalf of the Clark County School District. Just a little background. The Clark County School District educates approximately over 300,000 students and has over 30,000 employees. Even though there is the ADA, we must have the management decisions and ability to assign teachers where we need them.  I would like to start by saying that I would not have thought that she would be better served in the classroom. She would be better served or she would have been better served? She would better serve the district and the needs of the students by being in the classroom. She could impart her knowledge to these children. Teaching is not a physically demanding job. The whole point is, she says she wants to be able to sit. The district, she could sit. They were going to give her a classroom aid. But to go back to the start with the Cleveland issue, a couple of the points you made. First of all, starting with the FMLA forms. On both, the first one was made in April when she was in the literacy position because the year goes through June 10th or so. So she stopped working at the end of March saying, I can't even do my literacy job. The doctor takes her off work, says she's incapacitated, she can't do work. At all. Until released. And while that does give some indication that maybe there will be a release in the future, none of her doctors ever released her. So she stays off work through June. When's the latest doctor report on the record that we have? The latest doctor note is the PERS application in October, where if you look at that, and it's different than an SSDI application that we point out, the main issue there is there are three categories, and that's in October. So you say the PERS, where is that in the record? I want to look at that. The PERS doctor form is at 140. Well, Judge Fletcher is fishing that out. So that was dated September 2nd of 2008. I was going to say, I don't see anything in October. No, it's September. What happened is PERS then approved her permanent and total disability in October. But, counsel, that says, I certify, I have examined the above-named patient as described, and that said person is unable to work due to injury or mental or physical illness. Correct. But this doesn't tell me anything about whether she could do the job with accommodation, does it? Well, yes, it does, because if you look, that Section E actually has three sections. Right. The first section says can do the job. The second section is where they would certify they are able to do work on a limited basis with the following capacity. If a doctor is going to say to you. I'm sorry. I want to make sure I'm with you. What page are you reading from? This is from 140. Page 140. Of the supplemental excerpts. And that's the one that says part 4. And it's subsection E. Subsection E. At the bottom third. There are actually three parts where the doctor can certify. Right. The first part is that the person can work. Right. The second part is that they are able to work in some limited capacity. Right. If the doctor was going to say you can do the literacy job, because the whole part of PERS is you have to be unable to do your current job, comparable jobs, and jobs you held within the last year, she had certainly held the literacy job within the last year. Yeah. Now, that's the same form that if you look on page 139 that she's filled out in her own handwriting. And if I look at part B, it says what other jobs have you performed during the past year? Answer, literary specialist. What duties of those jobs can't you perform? That's present tense. Lifting, bending, stooping. Number two, what duties of those jobs can you perform, present tense, sitting to work? Well, right. And I would tell the district's position is, first of all, sitting is not a function of the job. She's just saying this is what I can physically do. That form is asking the employee, because PERS runs on you cannot do your current job or what you have done in the last 12 months. So the form that Ms. Smith filled out, 139, is the form where she has to disclose what she's done in the last 12 months. And she discloses I was a literacy specialist. By the nature of the definition of a disability, when the doctor says on 140 you're unable to do the job for purposes of PERS, the doctor is certified that she cannot do her past job, which is literacy. All that Ms. Smith is saying is I can still sit. It's Ms. Smith's position now that she should be given the literacy position, the position that her own doctor in April gave her two notes on May 1st, exact same notes, one saying she can't do the literacy position, you need to take her off, and also saying we request that you keep her as a literacy position. But, counsel, you keep shifting horses. Which form is it, which admission is it that you think is truly inconsistent with her ADA status? It's the doctor's cert, which is 140, that Ms. Smith submits as the medical support for her PERS disability. PERS, not the family medical eval. Right. We would submit that the two are also inconsistent. Okay. So there's three. Right, right, right. There's the April FMLA where the doctor certifies she's unable to do the job. She's incapacitated. Then there's the August one where the exact same language, I'm sorry, I have it in my notes, that she says she can do no work. The first one says at all. The second one says of any kind. And both suggest that the doctor may be continuing to see her for a possible release, which certainly never happened. And then you get the PERS one, which is the third one, which then says conclusively she's unable to do the job. So my question, to be really clear, are you relying on all three? Yes. Okay. So the problem with the other two, the first family medical leave act, it seems to me, is it doesn't say forever. It says that she can't, she hasn't been released yet. Right? Correct. It's, I would possibly agree with that, is she had ever been released. What you have is her saying she can't do the job, any job in April, you can't do any job in October, you can't do any job in September. It's consistent through this all period of time. Never did a doctor ever come back and say, oh, I really meant she could do some job. That's the inconsistent. Under Cleveland, the Supreme Court said when you make these kind of representations and understand, I think there were two discussions in Cleveland. One was if you make a legal representation, like you're eligible for SSDI, that's one thing. That's a legal statement. But if you make a factual representation, like you're unable to work, that is much more of a problem and the plaintiff must be able to state some facts which would show that is not inconsistent. There is no doctor, testimony, evidence whatsoever that would countermand that from April all the way to September that she's been unable to work at any of those jobs. Here's my problem with this case. I mean, I'm just going to describe this narrative as I think what's going on here. Here's a woman with severe back problems. I think nobody's disputing that that's so. She has worked for several years as a literary specialist. Prior to that time, she was a classroom teacher. The new principal comes in and says, I want you to be a kindergarten teacher. She says, I can't do that because being a kindergarten teacher has all kinds of physical demands that a literary specialist does not. I think I know enough about kindergarten teachers, having had three children who have gone through kindergarten, to know kind of what kindergarten teachers do. And they move around a little bit. They, you know, okay. And she gets her back up and basically says, well, to heck with you guys. I'm going out on sick leave, making it very clear that she will be delighted to continue to work as a literary specialist, but there's no way she's going to work as a classroom teacher. And these forms submitted, the first one, the PERS form, I guess the first one at issue here is the Family Medical Leave Act. That's submitted the 25th of August. And the PERS form is submitted on the 2nd of September. I'm sorry, the first FMLA form was submitted in April. I'm sorry, but there's a second FMLA form. The second of the FLMA forms is in August. That's the one where the doctor says out indefinitely until the doctor says she can return to work. Well, I mean, basically both sides are playing hardball. But I confess I don't read either the FMLA or the PERS application as saying anything other than I can't do it now. And she's playing hardball with you and you're playing hardball with her. And if I may, first of all, she never indicated, as you suggested, I'm ready to come back to work if you let me be a literacy specialist. That note said no. The record is full of that outside of these forms. And the e-mails that go back and forth, she's always saying I want to work as a literary specialist. If you give me that job, I'll be there. In the future, she never claimed. She said that's my accommodation. And you're right, when you said she dug in, that's true. I would respectfully disagree that the school district dug in. We offered her a full-time aid in that classroom. We were not going to keep her in the kindergarten. I beg to differ. You did dig in in the sense that we will not let you work as a literary specialist. You said you will work in the classroom. We will. At the very last minute, your person says we'll give you a full-time aid. But you never said you can go back and work at the job that you've had. That's absolutely correct. And the position of the district is through the interactive process, she would never talk with us and the reasonable accommodation. We must be able to put people where we need them. There was an opening for a literary specialist and she applied for it. That's true. But the principle determines that this is going to be good for kids. And if the suggestion is we cannot give you a reasonable accommodation by putting a person in that job with you in the classroom to do the physical things and also move you all the way up to fifth grade, sixth grade, we've got to be able to have that discretion. Well, but we don't have in front of us a ruling as to whether or not we had a proper attempt to accommodate because it was dismissed on other grounds. Well, on other grounds. That would remain to be litigated if we were to send it back. Well, right. But certainly the law is it can be affirmed on other grounds. And again, when her position has been I need to sit when I can, that's 99.9 percent of her position. We are putting a person in that classroom with her with 8, 9, 10, 11, 12-year-olds, 13-year-olds. It's nothing like kindergarten. You don't have to pick them up. If I just may, teachers start at 22. Twenty years, 30 years into this, they're in their mid-40s. Lots of people have bad backs. If the district had turned around and this had been reversed and a teacher had said, I have a bad back, and the district had said, you can't work in the classroom, everybody would be all over the district. They'd say, give her an aid. Help her out in that classroom. We're going to put a second person in that classroom to totally say that the only accommodation for a bad back, with just no medical evidence from plaintiffs other than at one doctor's note of May 1st, and it in fact says that she can't deal with excessive exertion, those are the words of her own doctor. And we're going to put a second person in those things, in that classroom. And that's the accommodation question which the district judge didn't reach. He didn't reach, and we would urge that you can affirm on other grounds, not only that reasonable grounds, she would never talk to us, and certainly she was the reason for the breakdown. When you look at those e-mails from the principal. Also a reason, that's also a grounds that the district court didn't reach. Correct, correct. They were perfectly briefed and they would certainly be other grounds that can be affirmed. The law certainly is that other grounds can be used to affirm the summary judgment. I'm aware of that. Okay. Thank you. Why don't we give you a minute to respond? Okay. Yeah, just briefly. I mean, I think the Court got it right here. I mean, here's the individual in 2001. She saw that her back was out. She took it upon herself to go to be a literary specialist. She had to take classes for it and everything. And then, lo and behold, the district comes and says, you're not going to be a literary specialist anymore. You're going to be a kindergarten teacher. And he was saying about the interactive process, they did virtually nothing besides say, hey, you're going to be a classroom teacher or an upper grade teacher. We'll do any accommodations you want as long as that's your position. And the doctor clearly said that because of her back, that's just not a possibility with any accommodations. The district was going to spend like 50,000 on a classroom aid where just keeping her as a literary specialist costs nothing. I mean, it's so we would like this decision to be reversed and the case go to trial. Okay. Thank you very much. Thank both sides for your arguments. Smith v. Clark County School District submitted for decision.
judges: Fletcher, Gould, Christen